Marvin **PULVERS**, Plaintiff–Appellant,

v.

**FIRST UNUM LIFE INSURANCE COMPANY**, Defendant–Appellee.

**Docket No. 99–7887**

United States Court of Appeals, Second Circuit.

Argued: March 16, 2000

Decided: April 19, 2000

Bernard D'Orazio, New York, N.Y. (Pulvers, Pulvers, Thompson & Kutner, P.C., New York, NY, on the brief), for Plaintiff–Appellant.

Evan L. Gordon, New York, NY, for Defendant–Appellee.

Before: CABRANES and SOTOMAYOR, Circuit Judges, and TRAGER, District Judge.*

JOSÉ A. CABRANES, Circuit Judge:

Plaintiff Marvin Pulvers appeals from a judgment, entered July 8, 1999, affirming the denial of his application for disability insurance benefits under a group policy (the "Policy") issued by defendant First UNUM Life Insurance Company ("UNUM") to Pulvers's law firm. UNUM denied the application for benefits on the ground that Pulvers's disability was a preexisting condition and, thus, was not covered by the Policy. We conclude that this determination, although nominally based on an unreasonable construction of the Policy (as we discuss below), was not arbitrary and capricious or in violation of N.Y. INS. LAW § 3234(a)(2) (McKinney 1985 & Supp.1999–2000). Accordingly, we affirm the judgment of the District Court.

## I.

UNUM issued the Policy to Pulvers's law firm with an effective date of coverage

---

* The Honorable David G. Trager, United States District Judge for the Eastern District of New York, sitting by designation.

of May 24, 1995. The Policy defines a claimant as disabled if he is "limited from performing the material and substantial duties of [his] regular occupation due to [his] sickness and injury" and has "a 20% or more loss in [his] indexed monthly earnings due to the same sickness or injury." The Policy, however, excludes coverage for any disability "caused by, contributed to by, or resulting from ... [a] pre-existing condition." A pre-existing condition is defined by the Policy as follows:

You have a pre-existing condition if:

—you received medical treatment, consultation, care or services including diagnostic measures, or took prescribed drugs or medicines in the 12 months just prior to your effective date of coverage; *and*

—the disability begins in the first 12 months after your effective date of coverage.

(emphasis added).

Pulvers was, until July 6, 1996, the managing partner of his law firm. In 1985, approximately ten years before the effective date of the Policy, Pulvers suffered a heart attack and underwent coronary bypass surgery. For the next eleven years, Pulvers was treated without incident for coronary artery disease and hypercholesteremia by his cardiologist, Dr. Robert Roven. In April 1996, however, approximately eleven months after the effective date of the Policy, Pulvers suffered a mild inferior wall infarction. As a result, cardiac catheterization was performed, revealing, in Dr. Roven's words, "significant obstructive lesions in the saphenous vein graft and the right coronary artery and obstructive lesions in the left main coronary artery and in the internal mammary artery graft to the left anterior descending coronary artery." These problems were corrected by placing two stents in the vein graft, by a rotoblater procedure on the left main coronary artery, and by angioplasty on the arterial graft.

On May 20, 1996, Pulvers was examined by Dr. Roven, whose notes from that day state as follows: "Feels perfectly well. No more even vague [symptoms]." On June 9, 1996, Pulvers returned to work, and resumed his ordinary activities as managing partner. Pulvers worked in that capacity without any apparent incident until July 6, 1996, when he began experiencing severe chest pains and other symptoms. Following tests, Pulvers was diagnosed with posterior wall ischemia, and cardiac catheterization was performed again. This procedure confirmed that Pulvers had triple vessel coronary artery disease (which had been known since the 1985 incident) and revealed restenosis of the left main coronary artery (which had been treated previously in April 1996). Dr. Roven placed a stent to the left main coronary artery. Although this treatment was apparently successful, Dr. Roven advised Pulvers that he could no longer safely work as managing partner of his law firm.

On or about July 25, 1996, Pulvers applied for disability insurance benefits under the Policy. In his claim form, Pulvers noted that he first experienced symptoms of heart trouble on "APRIL 11, 1996 AND JULY 6, 1996" and was first treated by a physician on "APRIL 16, 1996." He reported also that he had been hospitalized for treatment in both April and July 1996. In answer to a question about whether he "ever had the same or a similar condition in the past," Pulvers noted his 1985 bypass surgery. In a physician's statement accompanying the claim, Dr. Roven reported objective findings of "MYOCARDIAL INFARCTION (4/11/96)" and "CORONARY STENT REOCCLUSION (7/6/96)." Additionally, Dr. Roven noted that Pulvers's first symptoms appeared on April 11, 1996, that he first examined Pulvers on April 17, 1996, and that Pulvers was "first unable to work" on April 11, 1996. Dr. Roven confirmed that Pulvers had "undergone surgery" in both April and July 1996.

UNUM denied Pulvers's application for benefits on the ground that his disability

was a pre-existing condition. Noting the Policy's definition of a pre-existing condition quoted above, UNUM asserted that Pulvers's claim was barred because (1) he had received treatment and taken medication for coronary heart disease during the twelve months prior to the effective date of the Policy (May 24, 1995); and (2) his disability began in April 1996, within the first twelve months after the effective date of the Policy. Following exhaustion of his administrative remedies, Pulvers commenced this action in New York State Supreme Court, New York County. Thereafter, UNUM removed the action to the District Court, and discovery was taken. Following a two-day bench trial on a stipulated record, the District Court upheld UNUM's denial of Pulvers's application on the ground that the denial was not arbitrary and capricious. Judgment was entered July 8, 1999, and Pulvers filed a timely notice of appeal.

## II.

As an initial matter, Pulvers argues that the District Court erred in applying the deferential arbitrary and capricious standard of review. Pulvers concedes that the Policy grants to UNUM "discretionary authority to determine ... eligibility for benefits and to interpret the terms and provisions of the policy," and that such language generally prompts the arbitrary and capricious standard of review. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Sullivan v. LTV Aerospace & Defense Co.*, 82 F.3d 1251, 1255 (2d Cir. 1996). Nevertheless, he argues that *de novo* review is appropriate here. because (1) UNUM was operating under "an inherent conflict of interest" based on its dual status as plan administrator and plan insurer; and (2) the record reveals that UNUM was biased against Pulvers's claim and intent on finding a way to deny it. ▮ We conclude that these contentions are without merit. In order to trigger *de novo* review of an administrator's

decision when the plan itself grants discretion to the administrator, a plaintiff must show that "the administrator was *in fact* influenced by the conflict of interest." *Sullivan*, 82 F.3d at 1256 (emphasis added); *see also id.* at 1259 (holding that the burden of proving that an administrator was influenced by a conflict of interest rests with the plaintiff). Here, however, there is no evidence that UNUM's decision was actually affected by a conflict of interest. The fact that UNUM served as both plan administrator and plan insurer, although a factor to be weighed "in determining whether there has been an abuse of discretion," *id.* at 1255 (internal quotation marks omitted), is alone insufficient as a matter of law to trigger stricter review, *see id.* at 1255–56; *see also Whitney v. Empire Blue Cross & Blue Shield*, 106 F.3d 475, 476–77 (2d Cir.1997) (per curiam). As for Pulvers's additional specific evidence of alleged bias—an internal UNUM memorandum noting that Pulvers's law firm "specializ[es] in disability claims," reference in Pulvers's claim file that UNUM inquired as to whether Pulvers's settlement of an earlier disability claim under a different policy would bar his claim, and a cover sheet for Pulvers's claim file on which the date of Pulvers's disability was initially recorded as July 6, 1996 and subsequently crossed out—we conclude that it shows little more than that UNUM investigated the merits of Pulvers's claim.

▮ In short, the District Court properly applied the arbitrary and capricious standard of review to the denial of Pulvers's application for benefits, and we shall do the same. *See O'Shea v. First Manhattan Co. Thrift Plan & Trust*, 55 F.3d 109, 112 (2d Cir.1995). Accordingly, we may overturn UNUM's denial of benefits "only if it was without reason, unsupported by substantial evidence or erroneous as a matter of law." *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 442 (2d Cir.1995) (internal quotation marks omitted). Where both the plan administrator and a spurned claimant "offer rational, though

conflicting, interpretations of plan provisions, the [administrator's] interpretation must be allowed to control." *O'Shea*, 55 F.3d at 112 (internal quotation marks omitted). Nevertheless, where the administrator "impose[s] a standard not required by the plan's provisions, or interpret[s] the plan in a manner inconsistent with its plain words, . . . [its] actions may well be found to be arbitrary and capricious." *Id.* (internal quotation marks omitted).

## III.

Under the terms of the Policy quoted above, Pulvers's disability is excluded from coverage as a pre-existing condition if: (1) he had received treatment for coronary artery disease in the twelve months prior to May 24, 1995, the effective date of the Policy; and (2) his disability began between May 24, 1995 and May 24, 1996. Since Pulvers concedes that he had received treatment from Dr. Roven for coronary artery disease in the twelve months prior to May 24, 1995, the dispositive issue is whether Pulvers's disability began in April 1996 or July 1996.

In asserting that Pulvers's disability began in April 1996, UNUM nominally relies on a clause in the Policy, the Elimination Period Clause, that states in relevant part:

> You must be continuously disabled through [an] elimination period [of 90 days before you are eligible to receive benefits]. *UNUM will treat your disability as continuous if your disability stops for 30 days or less during the elimination period.* The days that you are not disabled will not count toward your elimination period.

(emphasis added). UNUM reasons as follows: (1) Pulvers's disability began in April 1996; (2) Pulvers returned to work on June 9, 1996; (3) on July 6, 1996—

fewer than thirty days later—Pulvers's disability resumed and he stopped working; (4) under the Elimination Period Clause, the July 1996 disability is therefore considered continuous from April 1996; (5) accordingly, Pulvers's disability began before May 24, 1996; so (6) Pulvers's disability is excluded as a pre-existing condition.

■ To the extent that this argument depends on application of the Elimination Period Clause to this case, we agree with Pulvers that UNUM's reading of the Policy is flawed. By its plain terms, the Elimination Period Clause's thirty-day test for whether a disability is "continuous" applies only "during the elimination period." Nothing in the Policy indicates that this test is applicable to a determination of when a disability begins for the purposes of the pre-existing condition exclusion. Moreover, the provisions serve fundamentally different purposes (the continuing disability provision of the Elimination Period Clause is designed principally to remove any disincentive for claimants to try to return to work), and they appear nine pages apart in wholly different sections of the Policy.[1] To be sure, there may be, as UNUM argues, sound policy reasons to apply a test like that in the Elimination Period Clause to circumstances like these. However, UNUM is required to enforce the Policy as it is written, not as it might have been written, and as the Policy is written, the Elimination Period Clause has no application to the pre-existing condition exclusion and, thus, to this case.

■ Notwithstanding UNUM's strained construction of the Policy, we conclude that UNUM's denial of Pulvers's application for benefits was not arbitrary and capricious.[2] Separate and apart from the

---

1. Notably, Joseph Braz, a senior risk specialist for UNUM, conceded in deposition testimony that he was not aware of any other case in which the Elimination Period Clause had been applied to determine when a disability

began for purposes of the pre-existing condition exclusion.

2. Ironically, had we accepted UNUM's construction of the Policy, we would have been required to order a remand to UNUM for

Elimination Period Clause, the determination of whether Pulvers's disability is excluded as a pre-existing condition turns *solely* on the medical evidence with respect to whether Pulvers's July 1996 medical problem actually began in April 1996. Despite UNUM's nominal reliance on the Elimination Period Clause, it made a finding that Pulvers's April and July 1996 incidents were medically the same; indeed, the premise of its analysis was that the two were medically the same.[3] To be sure, there is evidence in the record, including statements from Dr. Roven and other physicians, that would have supported a contrary finding. However, in light of the similarities, in both symptoms and treatment, between the April and July 1996 incidents, and in light of Pulvers's own submissions when he made his initial claim for benefits, we cannot say that UNUM's determination was "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Pagan*, 52 F.3d at 442 (internal quotation marks omitted).

## IV.

Our conclusion that UNUM's denial of Pulvers's application was not arbitrary and capricious does not end the necessary analysis, however. Pulvers argues, as he did before the District Court, that because he stopped working on July 6, 1996, which was more than twelve months after the effective date of the Policy, UNUM's deni-

al of his application for benefits violates N.Y. Ins. Law § 3234(a)(2). That provision, which was enacted by the New York State Legislature in 1993, provides in relevant part:

(a) Every group or blanket policy issued ... in this state which provides benefits by reason of the disability of the insured and which includes a pre-existing condition provision shall contain in substance the following provision or provisions which in the opinion of the superintendent are more favorable to the members of the group:

. . . .

(2) No pre-existing condition provision shall exclude coverage for a period in excess of twelve months following the effective date of coverage for the covered person.

*Id.* Pulvers argues that UNUM's denial violates this provision because it effectively extends the Policy's pre-existing condition provision beyond the statutory maximum of twelve months.

■ We are unpersuaded by this argument. Section 3234(a)(2) limits pre-existing condition provisions in group disability policies to a maximum of twelve months. By its terms, the Policy at issue here complies with that requirement. To be sure, Pulvers finally ceased working as the managing partner of his firm on July 6, 1996, more than twelve months after May 24, 1995, the effective date of the Policy.

---

further proceedings. Although the Policy defines disability based on one's *ability* to perform "the material and substantial duties" of his occupation, not on whether one *actually* performs them, UNUM treated June 9, 1996—the date Pulvers returned to work following his April 1996 medical problems—as a proxy for the date his disability ceased. There is evidence in the record, however, that Pulvers felt "perfectly well" on May 20, 1996, which might mean that his April 1996 disability had ceased as of that date. If that were the case, then the disability would have ceased for more than thirty days (from at least May 20, 1996, when Pulvers felt "perfectly well," to July 6, 1996, when he stopped working pursuant to Dr. Roven's advice), and under the Elimination Period Clause the July 1996 inci-

dent would have been treated as the beginning of a new disability.

3. In this respect, and as the previous footnote reveals, UNUM's application of the Elimination Period Clause in this context could only have helped Pulvers. That is, with or without the Elimination Period Clause, UNUM made a determination that Pulvers's April and July 1996 medical problems were the same. Had the Elimination Period Clause applied, and had Pulvers's disability ceased for *more* than thirty days (as, indeed, it might have), then UNUM would have been compelled to treat the two incidents as legally distinct, notwithstanding the fact that they were factually the same.

However, nothing in § 3234(a)(2) suggests that a pre-existing condition provision cannot apply in such a case when the medical evidence supports a finding that the disability *actually* began within the statutorily permitted twelve-month period. Since we have already affirmed UNUM's judgment concerning the date on which Pulvers's disability actually began, we conclude that Pulvers's argument concerning § 3234(a)(2) is without merit.

Were we to consider the matter, § 3234(a)(2) might give us pause in another way. Specifically, it could be argued that § 3234(a)(2) allows an insurer to exclude coverage for a pre-existing condition for twelve months after the effective date of coverage, but requires the insurer to commence payments from that date forward. Under this interpretation, the twelve-month period referred to in the statute would be a "waiting period" that tolls coverage rather than bars it, and UNUM's denial of Pulvers's application would be a violation of the statute insofar as it was a refusal to make disability payments from May 24, 1996 (twelve months after the effective date of Pulvers's coverage) onward.

The text of § 3234(a)(2) is ambiguous as to whether this was the New York State Legislature's intent or whether the legislature intended merely to establish that a disability insurer could not exclude coverage for a pre-existing condition that resulted in a disability occurring after an initial twelve-month period. The meager legislative history is similarly ambiguous. On the one hand, the New York Senate Introducer's Memorandum in support of the bill indicates that one purpose of the statute was to establish pre-existing condition limitations in the group disability insurance context that are "similar" to those in the health insurance context—where waiting periods are plainly required. N.Y. STATE SEN. INTRODUCER'S MEM. IN SUPPORT OF S. 6103 (1993); *see also* N.Y. INS. LAW § 3232(b). On the other hand, a co-sponsor of the bill in the Assembly emphasized that the language of § 3234 was "carefully drafted to recognize the *differences* between health insurance and disability insurance," Letter from Assemblyman Alexander B. Grannis to Elizabeth D. Moore, Counsel to the Governor 2 (July 26, 1993) (emphasis added)—a statement that is especially noteworthy because the health insurance provision analogous to § 3234(a)(2) explicitly refers to the twelve-month period as a "waiting period" while § 3234(a)(2) does not. *See* N.Y. INS. LAW § 3232(b). Unfortunately, the only New York Court to consider a pre-existing condition provision of a group disability insurance policy since § 3234 was enacted did little to clear up this mess. *See Sloman v. First Fortis Life Ins. Co.*, 698 N.Y.S.2d 295 (2d Dep't 1999). Although the Court plainly treated the plaintiff's pre-existing condition as an *exclusion* of coverage rather than as a *toll* of coverage, as the alternative interpretation of the statute would require, *see id.* at 297 (holding that "the pre-existing condition *exclusion* applies *to bar* coverage for [the plaintiff's injuries]" (emphasis added)), it did not consider the matter explicitly or even cite subsection (a)(2) of the statute specifically (it cited § 3234 as part of a string citation for an unrelated proposition).

The proper interpretation of § 3234(a)(2) is an important issue for the New York insurance industry, the employers who are purchasing these policies, and the employees who are concerned about coverage of potentially pre-existing conditions. Nevertheless, we decline to resolve this important and complex issue of New York State insurance law in this case. We have "repeatedly held that if an argument has not been raised before the district court, we will not consider it." *Kraebel v. New York City Dep't of Hous. Preservation and Dev.*, 959 F.2d 395, 401 (2d Cir. 1992); *accord Jacobson v. Fireman's Fund Ins. Co.*, 111 F.3d 261, 266 (2d Cir. 1997). Although this rule allows for exception in some circumstances, *see Readco, Inc. v. Marine Midland Bank*, 81 F.3d

295, 302 (2d Cir.1996), the rule assumes extra importance in this case for several reasons. First, Pulvers did not even raise the argument on appeal himself, but rather pressed it only after one of the members of the panel suggested it during oral argument. Second, the record is lacking evidence that might be useful for resolving which interpretation of the statute is correct, such as evidence of industry practice before and after the enactment of the statute. And finally, the argument involves a complex and novel issue of state law. For these reasons, as well as the reasons that generally underlie the rule that we ordinarily will not consider arguments raised for the first time on appeal, we deem the argument waived and leave the matter to be decided in another case.[4]

## V.

In sum, we hold as follows:

(1) The District Court properly applied the arbitrary and capricious standard of review to UNUM's denial of Pulvers's application for disability insurance benefits;

(2) UNUM's construction of the Policy—applying the continuing disability provision of the Elimination Period Clause to determine when Pulvers's disability began for the purposes of the pre-existing condition provision—was unreasonable as a matter of law;

(3) nevertheless, UNUM's independent judgment that Pulvers's disability *actually* began in April 1996 rather than July 1996 was not arbitrary and capricious;

(4) accordingly, UNUM's denial of Pulvers's application for disability benefits on the ground that his disability began between May 24, 1995 and May 24, 1996 and therefore was excluded from coverage by the Policy's pre-existing condition clause was itself not arbitrary and capricious; and

4. We note that if or when this issue is presented to a panel of this Court, the panel may want to solicit an amicus brief from the New

(5) this application of the pre-existing condition provision of the Policy is not inconsistent with N.Y. Ins. Law § 3234(a)(2), at least in the manner asserted by Pulvers in the District Court.

Accordingly, the judgment of the District Court is affirmed.

York Superintendent of Insurance and/or consider certifying the question for decision by the New York Court of Appeals.