Amadu Mohamed TURAY, Plaintiff,

v.

AETNA U.S. HEALTHCARE,
Defendant.

No. 00 CIV. 1675(AGS).

United States District Court,
S.D. New York.

March 30, 2001.

## MEMORANDUM ORDER

SCHWARTZ, District Judge.

Plaintiff Amadu Mohamed Turay brings this action, pursuant to the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq.* ("ERISA"), to obtain benefits allegedly due him under a disability benefits plan administered by defendant Aetna U.S. Healthcare ("Aetna"). Before the Court is defendant's motion for summary judgment. For the reasons set forth below, the motion is granted.

## I. BACKGROUND

The following facts are undisputed. As of February 1999, Mr. Turay worked as a Claims Representative for Progressive Insurance Company ("Progressive"). (Def.'s Rule 56.1 Statement of Material Facts ("Def.'s 56.1") ¶¶ 1–2; Pl.'s Rule 56.1 Counter–Statement of Material Facts ("Pl.'s 5.61") ¶ A.) His job involved long periods of sitting at a desk. (Def.'s 56.1 ¶ 2; Pl.'s 56.1 ¶ B.) As a Progressive employee, plaintiff was entitled to certain benefits. (Def.'s 56.1 ¶ 3.) Included among these was coverage under a Group Accident and Health Insurance Policy (the "Plan") that provided disability benefits. (*Id.*) The Plan was provided by Aetna. (*Id.*) Progressive also provided certain short-term disability benefits to its employees under a separate plan. (*Id.* ¶¶ 5,7.)

Mr. Turay last worked on February 16, 1999. (*Id.* ¶ 6.) As of February 17, 1999, he claimed that he could not sit or stand for long periods due to constant pain in his back and coccyx. (*Id.* ¶ 6; Pl.'s 56.1 ¶ C.) On February 26, 1999, Progressive certified plaintiff as being on short-term disability, effective February 17, 1999. (Def.'s 56.1 ¶ 8.) On or about March 1, 1999, Progressive notified Aetna that plaintiff was eligible for short-term disability. (*Id.* ¶ 9.) On or about March 18, 1999, plaintiff's orthopaedic surgeon, Dr. Ernesto Lee, informed Aetna that plaintiff had a lumbosacral spine sprain; due to pain in his lower back plaintiff could not sit for any length of time. (*Id.* ¶ 10; Pl.'s 56.1 ¶ D.) On March 18, 1999, an Aetna nurse noted in Mr. Turay's file that she believed more functional information was needed regarding plaintiff's inability to return to work because his time off exceeded what Aetna considered normal. (Def.'s 56.1 ¶ 11.) Aetna nurses made similar notations in April. (*Id.*) On or about June 1, 1999, Aetna notified Mr. Turay that Aetna would not continue to certify his disability for benefits without "objective findings." (*Id.* ¶ 12.) In response, Dr. Lee forwarded to Aetna an MRI report indicating spinal stenosis at the L4–L5 vertebrae. Dr. Lee prescribed no long periods of sitting, standing, or walking. (*Id.* ¶ 14; Pl.'s 56.1 ¶ F.) Mr. Turay's physical therapists also submitted a description of his therapy plan and a listing of the dates on which he had undergone therapy. (Def.'s 56.1 ¶ 13; Pl.'s 56.1 ¶ E.) On July 19, 1999, an Aetna employee noted in Mr. Turay's file that his disability should be certified through July

26, 1999. The employee also sent the case to an Aetna medical director for further review and for consideration of an independent medical exam. (Def.'s 56.1 ¶ 16.) On July 30, 1999, Aetna advised plaintiff that it was requiring him to undergo an independent medical exam. (*Id.* ¶ 17.)

On August 11, 1999, Mr. Turay was examined by Dr. Milton Smith, an orthopaedic surgeon. (*Id.* ¶ 18; Pl.'s 56.1 ¶ G.) Plaintiff and defendant disagree about the length of the exam and about what tests Dr. Smith conducted. Whatever the nature of his examination, Dr. Smith concluded that Mr. Turay could return to a sedentary job, albeit with certain restrictions. Dr. Smith stated that plaintiff should engage in no heavy lifting, should not stand for more than two hours at a time or four hours during the day, and should not walk for more than two hours at a time or four hours during the day. Dr. Smith put no restrictions on Mr. Turay's ability to sit. (Def.'s 56.1 ¶¶ 18–19.) After reviewing this report on October 20, 1999, an Aetna medical director certified plaintiff's disability through October 20, 1999. (*Id.* ¶ 20.) The next day, Aetna informed Mr. Turay that, due to the independent medical exam and the Aetna medical director's review, Mr. Turay's disability would not be certified any further. Aetna also notified Mr. Turay that he could appeal the decision. (*Id.* ¶ 21.)

Plaintiff, through counsel, submitted his appeal by letter dated December 17, 1999. His appeal included Dr. Smith's report; a November 23, 1999 letter from plaintiff to Dr. Robert Hamlin; a report of an MRI performed on November 19, 1998; an MRI report dated September 23, 1999; a letter from plaintiff's physical therapists; an October 13, 1999 report from Dr. Hamlin; a November 29, 1999 report from Dr. Hamlin; a December 17, 1999 affidavit from plaintiff; and notes from Dr. Lee. (*Id.*

¶ 22; Pl.'s 56.1 ¶¶ G–K.) Mr. Turay's appeal was initially reviewed by Aetna employee Dr. Craig Ross. The appeal was subsequently reviewed by Aetna employee Mark Urbanetti. (Def.'s 56.1 ¶ 23.) By letter dated December 28, 1999, Mr. Turay submitted correspondence from the Social Security Administration indicating that the government had declared him eligible for Social Security disability benefits. (Def.'s 56.1 ¶ 24.) By letter dated January 10, 2000, defendant informed plaintiff that the denial of further certification was being upheld. (*Id.* ¶¶ 25–26.)

Plaintiff filed the instant action on March 6, 2000, alleging that defendant's denial of disability benefits after October 20, 1999 was improper and seeking benefits allegedly due him. Defendant answered the complaint, and the parties took certain discovery. Defendant has now moved for summary judgment.

## II. SUMMARY JUDGMENT STANDARD

A court may grant summary judgment only if it is satisfied that "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The burden rests on the moving party to demonstrate the absence of a genuine issue of material fact, which may be satisfied if it can point to the absence of evidence necessary to support an essential element of the non-moving party's claim. *See Goenaga v. March of Dimes Birth Defects Found.,* 51 F.3d 14, 18 (2d Cir.1995); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party meets its burden, the opposing party must produce evidentiary proof in admissible form sufficient to raise a material question of fact to

defeat the motion for summary judgment, or in the alternative, demonstrate an acceptable excuse for its failure to meet this requirement. *See Ortiz v. Makram,* No. 96 Civ. 3285(AGS), 2000 WL 1876667, at *4 (S.D.N.Y. Dec.21, 2000). "[M]ere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment." *Cifarelli v. Village of Babylon,* 93 F.3d 47, 51 (2d Cir.1996). All reasonable inferences and ambiguities are resolved in favor of the party against whom summary judgment is sought. *See Gallo v. Prudential Residential Servs., Ltd. Partnership,* 22 F.3d 1219, 1223 (2d Cir.1994). The court's function on a motion for summary judgment is not to weigh the evidence, but to determine if there is an issue for trial. *See Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. There is an issue for trial if the party opposing summary judgment offers sufficient evidence for that party to obtain a favorable jury verdict at trial. *See id.* Summary judgment is proper when reasonable minds could not differ as to the import of the proffered evidence. *See id.* at 250–52; *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991).

## III. DISCUSSION

### A. Standard of Review

▮ ERISA itself contains no standard for court review of a claim for benefits pursuant to 29 U.S.C. § 1132(a)(1)(B). In the absence of express statutory direction, the Supreme Court has provided a standard, holding that, "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Where the written benefit plan documents give the administrator discretionary authority to determine eligibility for benefits, a court will not disturb the administrator's ultimate conclusion unless it is arbitrary and capricious. *Pagan v. NYNEX Pension Plan,* 52 F.3d 438, 441 (2d Cir.1995) (citing *Bruch,* 489 U.S. at 115, 109 S.Ct. 948).

Under this analysis, the arbitrary and capricious standard applies here. The Plan contains a section entitled "Erisa Claim Fiduciary," which states, in pertinent part:

> For the purpose of section 503 of Title 1 of the Employee Retirement Income Security Act of 1974, as amended (ERISA), Aetna is a fiduciary with complete authority to review all denied claims for benefits under this policy.... In exercising such fiduciary responsibility, Aetna shall have discretionary authority to:
>
> > determine whether and to what extent employees and beneficiaries are entitled to benefits; and
> >
> > construe any disputed or doubtful terms of this policy.

(Aff. of Craig Ross dated Aug. 22, 2000 ("Ross Aff.") Ex. B at 0289.) This is sufficient to invoke the arbitrary and capricious standard. *See Pulvers v. First UNUM Life Ins. Co.,* 210 F.3d 89, 92 (2d Cir.2000) (language granting administrator " 'discretionary authority to determine ... eligibility for benefits and to interpret the terms and provisions of the policy' " is of the kind that "generally prompts the arbitrary and capricious standard of review.")

Even if the plan language grants the administrator discretion, the arbitrary and capricious standard may not apply if there is a conflict of interest. In *Pagan,* the court refused to deviate from the arbitrary and capricious standard based on Ms. Pagan's argument that the administrator had

a conflict of interest. "Pagan fails to explain how such an alleged conflict affected the reasonableness of the Committee's decision. Accordingly, we reject her contention [that the conflict warranted *de novo* review]." *Pagan*, 52 F.3d at 443 (internal citation omitted). Cases following *Pagan* have made clear that a conflict of interest alters the standard of review only when the conflict has actually affected the administrator's decision. *See Pulvers*, 210 F.3d at 92 ("In order to trigger *de novo* review of an administrator's decision when the plan itself grants discretion to the administrator, a plaintiff must show that 'the administrator was *in fact* influenced by the conflict of interest.'") (emphasis in the original); *Whitney v. Empire Blue Cross and Blue Shield*, 106 F.3d 475, 477 (2d Cir.1997); *Sullivan v. LTV Aerospace and Defense Co.*, 82 F.3d 1251, 1255–56, 1259 (2d Cir.1996).

Plaintiff does not argue that the arbitrary and capricious standard does not apply under the standards set forth in *Pagan* and its progeny. (Mem. of Law in Opp. to Aetna U.S. Healthcare's Mot. for Summ. J. ("Pl.'s Mem.") at 5 (acknowledging the rule in *Pagan* ).) Plaintiff argues, rather, that the Second Circuit's decision in *DeFelice v. American Int'l Life Assur. Co.*, 112 F.3d 61 (2d Cir.1997), provides grounds for deviating from the *Pagan* line of cases. (Pl.'s Mem. at 5–7.) Plaintiff is correct that the *DeFelice* Court voiced doubts about the treatment of conflicts of interest under the *Pagan* line of cases. In a lengthy footnote, the court made reference to its "numerous concerns regarding *Pagan*." *DeFelice*, 112 F.3d at 66 n. 3. *DeFelice*, however, employed a *de novo* standard of review, not the arbitrary and capricious standard of *Pagan*. *Id.* at 65–66. Indeed, the footnote referring to the *Pagan* line of cases concluded by commenting that "[w]hether or not we agree with all of the language in these cases [*i.e.*

*Pagan* and its progeny] concerning a conflict, that language is no obstacle to our reliance on a conflict in determining the scope of admissible evidence in a case that involves *de novo* review." *Id.* at 66 n. 3. Under these circumstances, the Court declines to read *DeFelice* as holding that district courts may disregard *Pagan*. In decisions handed down after *DeFelice*, the Second Circuit has continued to apply the *Pagan* analysis of conflicts. *See, e.g., Pulvers*, 210 F.3d at 92. It is a cardinal rule that a district court must follow the applicable precedents of the relevant circuit court. Absent evidence in the record demonstrating that a conflict of interest in fact influenced defendant's decision to deny plaintiff benefits after October 20, 1999, the Court applies the arbitrary and capricious standard of review.

**B. Application of the Arbitrary and Capricious Standard**

 A denial of benefits is arbitrary and capricious if the decision to deny benefits was without reason, unsupported by substantial evidence, or erroneous as a matter of law. *Pagan*, 52 F.3d at 442. Substantial evidence means such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the decision maker; it requires more than a scintilla, but less than a preponderance. *Miller v. United Welfare Fund*, 72 F.3d 1066, 1072 (2d Cir.1995). Under this standard, Aetna's decision to deny Mr. Turay benefits after October 20, 1999 was not arbitrary and capricious.

The Plan states, in pertinent part, that disability benefits will be denied when an individual is determined to no longer be disabled or when an independent medical exam fails to confirm the existence of a disability. (Ross Aff. Ex. A at 0312, 0314.) Aetna found that both of these criteria apply. The initial decision to terminate

benefits was made by Aetna employee Dr. R.E. Bonner. Dr. Bonner wrote in the administrative record that he "reviewed the IME [independent medical exam] of 8/11/99 performed by Dr. Smith. Dr. Smith [found] Mr. Turay fully capable of returning to his usual occupation without restriction." (Ross Aff. Ex. B at 0253.) Accordingly, Dr. Bonner ordered that plaintiff's disability only be certified through that day. (*Id.*) This decision was not without reason and is supported by substantial evidence, specifically the results of Dr. Smith's examination of Mr. Turay.

Mr. Turay then appealed Dr. Bonner's determination, submitting additional evidence for defendant to consider. (Ross Aff. Ex. D.) The appeal was submitted to Dr. Ross, who upheld Dr. Bonner's determination "on both clinical and contractual grounds." (Ross Aff. Ex. B at 267.) As set forth below, the Court concludes that Dr. Ross' decision based on clinical grounds was not arbitrary and capricious. Accordingly, the Court need not address Dr. Ross' independent, contractual grounds for denying Mr. Turay benefits after October 20, 1999.

The clinical ground for terminating plaintiff's benefits focused upon the evidence which Dr. Ross found supported the conclusion that Mr. Turay was no longer disabled and was "able to return to work at his own occupation." (Ross Aff. Ex. B at 267.) Dr. Ross listed the documents he considered in arriving at this conclusion. These included all but one of the documents submitted for defendant's consideration by plaintiff's counsel. (*Compare* Ross Aff. Ex. B at 0267 *with* Ross Aff. Ex. D.) Dr. Ross enumerated the specific findings in Dr. Smith's report that led Dr. Ross to conclude that Mr. Turay was no longer disabled. (Ross Aff. Ex. B at 0268.) Dr. Ross also specifically addressed plain-

tiff's concern that Dr. Smith's examination was insufficient. Dr. Ross listed the specific facts that led him to conclude that the exam was "thorough." (*Id.*) It is true that the one document which Dr. Ross did not say he considered is the affidavit Mr. Turay submitted on the appeal, which alleged that Dr. Smith's examination lasted only five minutes and consisted of only two tests. (Ross Aff. Ex. D at 036–037.) Dr. Ross did, however, consider the letter submitted by plaintiff's counsel (Ross Aff. Ex. B at 0267). That letter repeated the substance of Mr. Turay's affidavit. (Ross Aff. Ex. D at 08.) As such, Dr. Ross considered the substance of plaintiff's objections to Dr. Smith's examination and responded to it based on the evidence before him. Dr. Ross then went on to discuss the flaws he perceived in the additional materials submitted by plaintiff's counsel. He offered medical reasons as to why those materials did not convince him that plaintiff was disabled. (Ross Aff. Ex. B at 0238.) Given these facts, it is not possible to find that Dr. Ross' determination was without reason. The Court also finds that there is no genuine issue as to the presence of substantial evidence. Dr. Ross had before him the report of Dr. Smith's examination, which found that plaintiff was not disabled, and materials supporting plaintiff's claim that he was disabled. After examining these materials, Dr. Ross made two decisions: first, he accepted Dr. Smith's analysis and not Mr. Turay's arguments regarding the quality of Dr. Smith's examination; second, he decided that the medical evidence, taken as a whole, demonstrated that Mr. Turay was no longer disabled. Where an administrator makes such decisions based upon the evidence in the administrative record, that administrator is not acting in an arbitrary and capricious manner. *See, e.g., Pulvers*, 210 F.3d at 94 (upholding district court's ruling that denial of benefits was not arbitrary and

capricious where evidence in the record was sufficient to allow administrator to rule either way).

Plaintiff offers two arguments in support of his contention that Dr. Ross' conclusion was not supported by substantial evidence. First, plaintiff argues that the "treating physician rule" requires that the opinion of plaintiff's treating physician receive substantially more weight than the opinion of another doctor. (Pl.'s Mem. at 8–9.) Defendant responds that the treating physician rule is a creature of Social Security law,. and does not apply here. (Reply Mem. of Law of Aetna U.S. Healthcare in Supp. of its Mot. for Summ. J. ("Reply Mem.") at 13.) At least two district judges in this circuit have found that the Social Security standards are helpful, even though they are not binding. *See Piscottano v. Metropolitan Life Ins. Co.,* 118 F.Supp.2d 200, 212 (D.Conn.2000) (Arterton, J.); *Durr v. Metropolitan Life Ins. Co.,* 15 F.Supp.2d 205, 213 & n. 2 (D.Conn. 1998) (Goettel, J.). Even if the Court applies the Social Security standards, it does not alter the outcome in this case.

A treating physician's opinion is entitled to controlling weight if it is well-supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence. *Durr,* 15 F.Supp.2d at 213 (quoting 20 C.F.R. § 404.1527(d)(2)). The conclusions expressed by plaintiff's first treating physician, Dr. Lee, with the exception of a reference to an MRI report, are conclusory, and are inconsistent with the opinion of Dr. Smith. (Ross Aff. Exs. B, D.) The opinion of plaintiff's second treating physician, Dr. Hamlin, does set forth the bases for the doctor's conclusion, and appears to be supported by medically acceptable diagnostic techniques. (Ross Aff. Ex. D at 032–033.) Dr. Hamlin's opinion, however, is also inconsistent with that of Dr. Smith,

which also appears to be supported by medically acceptable diagnostic techniques. (*Compare id. with* Ross Aff. Ex. D at 013–017.) In light of this clear conflict, the opinions of plaintiff's treating physicians are not entitled to controlling weight.

Where a treating physician's opinion is not given controlling weight, the following factors determine how much weight it should be given: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." *Durr,* 15 F.Supp.2d at 213 (quoting 20 C.F.R. § 404.1527(d)(2)-(6)) (internal quotations omitted). With respect to Dr. Lee's opinion, the first and fourth factors incline in favor of granting the opinion weight, the second factor inclines against the opinion's weight, and the third and fifth factors appear to be neutral. (Ross Aff. Exs. B, D.) With respect to Dr. Hamlin's opinion, the second and fourth factors incline towards granting the opinion weight, the first factor inclines against the opinion's weight, and the third and fifth factors appear neutral. (Ross Aff. Ex. D.) Thus, both physician's opinions are entitled to some weight. Neither, however, is entitled to such weight as to render Dr. Smith's opinion insubstantial. Nor do the two opinions together have such an effect. Accordingly, even if plaintiff's treating physicians' opinions are given weight under the Social Security regulations, Dr. Smith's opinion still constitutes substantial evidence from which Aetna could have concluded that Mr. Turay was no longer disabled.

■ Plaintiff's second argument is that Dr. Smith's report was flawed. In support of this argument, plaintiff relies upon the deposition testimony of Dr. Ross. (Affirm.

of Patrick F. Foley dated September 21, 2000 ("Foley Affirm.") at 5–12.) Defendant argues that this testimony may not be considered under *Miller v. United Welfare Fund*, 72 F.3d 1066 (2d Cir.1995). (Reply Mem. at 8–10.) In *Miller*, the Second Circuit ruled that "a district court's review under the arbitrary and capricious standard is limited to the administrative record." *Miller*, 72 F.3d at 1071. In *Miller* the court expressly gave consideration to the deposition testimony of one of the individuals who had taken part in the administrator's decision to terminate benefits. *Id.* at 1072 (discussing deposition testimony of Edward Byrne about the administrator's denial of benefits). From this, the Court concludes that, under *Miller*, a district court may consider testimony about the administrative decision-making process provided by participants in that process. Accordingly, the Court has determined to consider Dr. Ross' deposition testimony.

That testimony does not render Dr. Smith's report insubstantial. It is true that the deposition focused on certain alleged flaws in Dr. Smith's report. For example, it was brought out that Dr. Smith wrote down an erroneous date for Mr. Turay's accident. (Foley Affirm. at 6.) The date of the accident, however, has little bearing on whether Mr. Turay could sit for extended periods at the time Dr. Smith examined him. Similarly of little importance is the fact that Dr. Smith did not know plaintiff's job responsibilities. (*Id.* at 8–10.) A physician need not know what a person does for a living to determine if that person can sit, stand, or walk. Some of the excerpts presented are entirely irrelevant, such as one demonstrating that Dr. Ross did not examine Mr. Turay in person. (*Id.* at 6.) This fact has no bearing on whether Dr. Ross, as an employee of the administrator, was arbitrary and capricious in deciding the appeal of the denial of benefits. In sum, the deposi-

tion excerpts presented, while illustrating certain flaws in Dr. Smith's report, do not render the report insubstantial or support a conclusion that Dr. Ross' affirmation of the denial of benefits was arbitrary and capricious.

Following Dr. Ross' review of plaintiff's appeal, an additional review was conducted by another Aetna employee, Mark Urbanetti. The administrative record contains no comments by Mr. Urbanetti. (Ross Aff. Ex. B at 0271–0272.) At the conclusion of his review, however, Mr. Urbanetti sent a letter to plaintiff's counsel stating that the appeal had been denied. (*Id.* at 0272; Ross Aff. Ex. G.) That letter makes the same, or substantially the same, points made by Dr. Ross. (Ross Aff. Ex. G.) For the reasons set forth above, the conclusions in Mr. Urbanetti's letter are not arbitrary and capricious to the extent that they are based on the evidence in the administrative record in support of the finding that plaintiff was no longer disabled. Accordingly, the decision to terminate Mr. Turay's benefits was not arbitrary and capricious.

Plaintiff also claims that the defendant acted in an arbitrary and capricious manner in denying him partial disability benefits. (Pl.'s Mem. at 9–11.) It is undisputed, however, that one of the requirements for partial disability benefits was that an individual be unable to perform all the material duties of his regular job on a full-time basis. (Ross Aff. Ex. A at 0379.) As set forth above, defendant did not act in an arbitrary and capricious manner in finding that plaintiff was not disabled and could perform the duties of his regular job. It follows, then, that the decision to deny partial disability benefits was not arbitrary and capricious.

## IV. CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment is

granted. The Clerk of the Court is directed to enter judgment in favor of defendant and close the file in this action.

SO ORDERED.