22-2544-cv
*Aracich v. Bd. of Trustees et al.*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

*Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.*

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 24th day of July, two thousand twenty-three.

PRESENT:   Amalya L. Kearse,
                     Dennis Jacobs,
                     Steven J. Menashi,
                            *Circuit Judges.*

_____

MATTHEW ARACICH,

         *Plaintiff-Appellant,*

    v.                                                          No. 22-2544-cv

THE BOARD OF TRUSTEES OF THE EMPLOYEE BENEFIT FUNDS OF HEAT AND FROST INSULATORS LOCAL 12, THE EMPLOYEE BENEFIT FUNDS OF HEAT AND FROST INSULATORS LOCAL 12, THE BOARD OF TRUSTEES OF THE PENSION FUND OF HEAT AND FROST INSULATORS LOCAL 12 PLAN, THE

PENSION FUND OF HEAT AND FROST INSULATORS LOCAL 12 PLAN, THE BOARD OF TRUSTEES OF THE HEAT AND FROST INSULATORS LOCAL 12 WELFARE FUND, THE HEAT AND FROST INSULATORS LOCAL 12 WELFARE FUND, AL WASSELL, IN HIS CAPACITY AS FUND MANAGER OF THE EMPLOYEE BENEFIT FUNDS OF HEAT & FROST INSULATORS LOCAL 12, JOHN DOES 1-10, WHOSE IDENTITIES ARE CURRENTLY UNKNOWN, CONSTITUTING THE TRUSTEES, PLAN ADMINISTRATORS OR FIDUCIARIES OF THE EMPLOYEE BENEFIT FUNDS OF HEAT & FROST INSULATORS LOCAL 12 AND THE PENSION FUND OF HEAT AND FROST INSULATORS LOCAL 12 AND THE HEAT AND FROST INSULATORS LOCAL 12 WELFARE FUND,

*Defendants-Appellees.*<sup>*</sup>

_____

For Plaintiff-Appellant:          CHRISTOPHER SMITH, Trivella & Forte, LLP, White Plains, NY.

For Defendants-Appellees:      JOSEPH E. CLARK (Myron D. Rumeld & Sydney L. Juliano, *on the brief*), Proskauer Rose LLP, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Briccetti, J.).

---

<sup>*</sup> The Clerk of Court is respectfully directed to amend the official caption as set forth above.

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Matthew Aracich appeals from a judgment of the district court granting the defendants-appellees' motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Aracich, the former business manager of the International Association of Heat and Frost Insulators Local No. 12 ("Union"), brought this action against the Welfare Fund of the Union ("Welfare Plan"); the Pension Fund of the Union ("Pension Plan" and, together with the Welfare Plan, "Plans"); the Board of Trustees of each of the Plans; Al Wassell, in his capacity as manager of the Plans; and ten unidentified defendants constituting the trustees, plan administrators or fiduciaries of the Plans. Aracich claimed that the defendants had improperly deemed Aracich not to be "retired" for the purposes of the Plans' governing documents. Based on that determination, the defendants denied his request for pension and retiree health benefits, a decision he alleges violated the Employee Retirement Income Security Act of 1974 ("ERISA") and state law.

Aracich filed his complaint in this action on November 19, 2021. The Trustees moved to dismiss the complaint under Rule 12(b)(6) on the ground that it failed to state a claim for relief. In a decision dated September 20, 2022, the district court dismissed the complaint in its entirety for failure to state a claim. *See Aracich v. Bd. of Trustees of Emp. Benefit Funds of Heat & Frost Insulators Loc. 12*, 629 F. Supp. 3d 103 (S.D.N.Y. 2022). Aracich now appeals. We assume the parties' familiarity with the underlying facts and procedural history.

## I

The Pension Plan and the Welfare Plan are multiemployer pension and welfare plans, respectively, that provide benefits to eligible participants. ERISA governs both. The Plans were instituted by collective bargaining agreements between the Union and employers who contribute to the Plans on behalf of their

3

employees. The Trustees, comprised of Union and employer representatives, oversee the Plans.

A plan document governs each of the Plans. Each plan document grants the Trustees the discretion to interpret the terms of the plan and to make the necessary benefit determinations. Section 6.3 of the Pension Plan Document ("PPD"), which governs the Pension Plan, provides that the Trustees are "the sole judges of the standard of proof required in any case and the application and interpretation of the Plan," App'x 232, while Section 6.4(a) provides that "[a]ny dispute as to eligibility, type, amount or duration of benefits or any right or claim to payments from the Plan shall be resolved by the Board of Trustees … and its decision … shall be final and binding on all parties," *id.* The Pension Fund Summary Plan Description explains that the Board of Trustees "reserves the right, in its sole and absolute discretion, to … interpret and decide all matters under the Plan, or any benefits provided under the Plan." *Id*. at 198.

The Welfare Fund Summary Plan Description similarly states that the Trustees and the claims administrator have "discretionary authority to interpret the terms of the Plan and to determine eligibility and entitlement to Plan Benefits in accordance with the terms of the Plan" and that "[a]ny interpretation or determination will be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious." *Id*. at 118.

The Pension Plan provides a participant with benefits if that participant has retired and qualifies for either a "[r]egular [p]ension" or an "[e]arly [r]etirement pension." *Id*. at 211-12 (§§ 3.2, 3.4). Qualification for either pension depends on "[p]ension [c]redits," *id*. at 208 (§ 1.20), which reflect the participant's earnings and time of service in "[c]overed [e]mployment," *id*. at 216 (§ 4.1). The PPD defines "[c]overed [e]mployment" as employment with an employer that is required

4

under a CBA or other agreement to contribute to the Pension Plan. *Id*. at 204-05 (§§ 1.8, 1.10).[†]

The PPD states that "[t]o be considered retired, a Participant must have separated from Covered Employment." App'x 239 (§ 6.8(a)). The Pension Fund Summary Plan Description explains that, in order to receive pension benefits, a participant "must stop working." *Id*. at 185. The Welfare Fund Summary Plan Description explains that retirees will be eligible to receive health benefits if they "work until age 60 and then [r]etire (as that term is defined in the [PPD]) while eligible for benefits." *Id*. at 132.

Aracich worked in covered employment at the Union where he served as business manager. In 2018, he left his position at the Union to become president of the Building and Construction Trades Council of Nassau & Suffolk Counties, AFL-CIO ("the Council"), where he is currently employed. After Aracich started work at the Council, the Council executed a participation agreement with the Plans pursuant to which the Council would contribute to the Plans on behalf of Aracich. The arrangement allowed Aracich to continue to accrue pension credits despite having left the Union.

On January 27, 2021, Aracich informed the Plans that, effective January 1, 2021, the Council intended to terminate the participation agreement and engage another benefits provider for Aracich. On February 11, 2021, Al Wassell, the manager of the Plans, responded to Aracich that the Plans accepted the Council's termination of the participation agreement. Then, on February 26, 2021, Aracich sent a letter to Wassell announcing that he would "be retiring from Local Union No. 12" that day, effective at 4:00 pm. *Id.* at 280.

---

[†] To obtain a "[r]egular pension," the participant must have reached the "normal retirement age" of 65 years, App'x 208 (§ 1.17), and have earned at least five years of pension credit, *id.* at 211 (§ 3.2). To obtain an "[e]arly [r]etirement [p]ension," a participant must be at least 55 years of age and have earned at least ten years of pension credit. *Id.* at 212 (§ 3.4). The amount of pension credits earned in a calendar year is a function of the hours worked in covered employment. *See id.* at 216. A participant may earn no more than one pension credit per year. *See id*.

At the time he sent the February 26 letter, Aracich was 60 years old—old enough to meet the age requirement for both an early retirement pension and retiree welfare benefits. He also had earned over thirty years of pension credits. However, he remained employed at the Council. His purported retirement was occasioned only by the Council ceasing to make contributions to the Plans and thereby no longer qualifying as a covered employer.

The Trustees understood Aracich's February 26 letter to be a claim for an early retirement pension and denied the claim by letter dated March 12, 2021. The denial letter informed Aracich that he could not begin receiving his pension benefits because he "never ceased working for the [Council]" and was therefore "not eligible under the terms of the Plan to commence receiving a pension benefit at this time." *Id*. at 281. The letter noted that the Pension Fund Summary Plan Description explains that a participant "must stop working" in order to begin receiving benefits. *Id.*

On May 3, 2021, Aracich appealed the claim, arguing that he had "retired" for the purposes of the Pension Plan because his post-retirement work was with the Council, which was no longer covered by a collective bargaining agreement with the Union. He also argued that the PPD and Pension Fund Summary Plan Description violated ERISA's "anti-cutback" rule, 29 U.S.C. § 1054(g), to the extent that those documents "expand which types of post-retirement employment triggered suspension of plan benefits," App'x 284.

The Trustees denied Aracich's appeal by letter dated May 21, 2021, repeating that Aracich was not retired for the purposes of the Pension Plan. The Trustees also argued that allowing Aracich to begin receiving benefits despite his current employment with the Council could compromise the Pension Plan's tax-qualified status. *Id*. at 281.

Following the denial, Aracich filed his complaint in this action, alleging five causes of action. Count One asserted a claim for pension and welfare benefits under ERISA § 502(a)(1)(B), contending that the Trustees arbitrarily and capriciously denied Aracich his pension and welfare benefits as promised by the terms of the Plans. Count Two alleged that the Trustees had violated ERISA § 510

6

by "engag[ing] in a scheme to intentionally interfere with [Aracich's] contractual and vesting rights and benefit entitlements." App'x 4.15 (¶ 48). The scheme consisted of (1) denying him benefits to which he was entitled and inducing other fund representatives to interfere with his rights under the Plans; (2) failing to notify him of a Pension Plan amendment that was applied after his alleged retirement; and (3) treating him differently from similarly situated Plan participants. *Id.* at 4.15-4.17 (¶¶ 47-53). Count Three sought a declaratory judgment that Aracich was entitled to benefits he had been denied. Count Four alleged that the Trustees' denial of Aracich's benefit claims constituted a common law breach of contract. Count Five contended that the Trustees breached their fiduciary duties (1) by denying Aracich benefits in contravention of the Plans' governing documents, (2) by misrepresenting the terms of these documents, and (3) by failing to adhere to the disclosure and reporting requirements set forth in 29 C.F.R. § 2520.104-23(b), 29 U.S.C. § 1030, and/or 29 U.S.C. § 1024(b).

## II

We review *de novo* a district court's dismissal of a complaint for failure to state a claim pursuant to Rule 12(b)(6). *Fink v. Time Warner Cable*, 714 F.3d 739, 740-41 (2d Cir. 2013).

## A

First, Aracich contends that the Trustees violated ERISA by interpreting the term "Contributing Employer" in an arbitrary and capricious fashion. According to Aracich, the Trustees wrongfully understood the term "as [referring to] any employer, not solely employers with a present obligation to contribute to the Pension Fund of Heat and Frost Insulators Local 12 Plan." Appellant's Br. 13. Aracich also claims that the district court erred in applying the arbitrary and capricious standard of review to his claim. Instead, he argues, *de novo* was the proper standard of review. We disagree.

"Section 502 of ERISA authorizes participants in an employee benefit plan to bring a civil action (i) to recover benefits due to them under the terms of their plan, and (ii) to obtain other appropriate equitable relief to redress violations or

7

enforce any provisions of ERISA or the terms of the plan." *Soto v. Disney Severance Pay Plan*, 26 F.4th 114, 117 (2d Cir. 2022) (internal quotation marks, alterations, and citations omitted). When "the relevant plan vests its administrator with discretionary authority over benefits decisions," its decisions "may be overturned only if they are arbitrary and capricious." *Roganti v. Metro. Life Ins. Co.*, 786 F.3d 201, 210 (2d Cir. 2015). Such discretion includes "interpret[ing] ambiguous plan terms." *Soto*, 26 F.4th at 121.

Under the "highly deferential" arbitrary and capricious standard, a district court will uphold a plan administrator's decision unless it was "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Id*. at 123 (quoting *Roganti*, 786 F.3d at 211). If a plan administrator and claimant "offer rational, though conflicting, interpretations of plan provisions, the administrator's interpretation must be allowed to control." *McCauley v. First Unum Life Ins. Co.*, 551 F.3d 126, 132 (2d Cir. 2008) (quoting *Pulvers v. First UNUM Life Ins. Co.*, 210 F.3d 89, 92-93 (2d Cir. 2000)).

According to the PPD, "[t]o be considered retired, a Participant must have separated from Covered Employment." App'x 239 (§ 6.8(a)). The PPD does not further define "separated." However, the Pension Fund Summary Plan Description explains that "[y]ou must stop working" in order to receive benefits. *Id.* at 185. To the extent that it is ambiguous whether "separated" refers to the participant actually separating from the employer—or whether separation could be accomplished by the employer ceasing to be a covered employer while the participant continues working—Sections 6.3 and 6.4 of the PPD grant discretion to the Trustees to determine whether an individual has "separated" and is therefore retired for the purposes of the plan.

We agree with the district court that the Trustees properly exercised such discretion here. In concluding that the interpretation of the Trustees was reasonable, the district court relied on the definition of "retire" found in the PPD, App'x 239 (§ 6.8); on the explanation in the Pension Fund Summary Plan Description that one "must stop working" in order to begin receiving benefits, App'x 185; and on the Trustees' concern that allowing Aracich to receive benefits

8

would jeopardize the Plan's tax-qualified status. These are proper considerations that, especially taken together, demonstrate that the Trustees' interpretation of the PPD was neither "without reason" nor "erroneous as a matter of law."

We disagree with Aracich's contention that we must review the Trustees' determination *de novo*. *De novo* review is appropriate when the administrator is interpreting unambiguous terms because "unambiguous language leaves no room for the exercise of discretion." *Soto*, 26 F.4th at 121 (quoting *O'Neil v. Ret. Plan for Salaried Emps. of RKO Gen., Inc.*, 37 F.3d 55, 59 (2d Cir. 1994)). The definition of "retire," including the requirement that a participant have "separated" from covered employment, does not unambiguously provide that a participant such as Aracich who continues working at the same employer must be considered retired for the purposes of the Plans.

**B**

Second, Aracich challenges the district court's dismissal of his claim under ERISA § 510, 29 U.S.C. § 1140. According to the district court, Aracich failed to state a claim under § 510 because he failed to plead the requisite intent or plausibly to allege an adverse employment action that was taken against him. He contends that he satisfied the pleading requirements of Federal Rule of Civil Procedure 8 and cites language from his original complaint. We agree with the district court that Aracich failed adequately to allege that he suffered an adverse employment action; we likewise agree that his allegations of a scheme by the Trustees and of disparate treatment compared to other similarly situated employees are conclusory. Those allegations accordingly do not move his claim "across the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). We affirm the district court's dismissal of Count Two.

**C**

Third, Aracich contends that the Trustees' interpretation of the term "retire" to require cessation of all employment—when the plan definition of "retire"

specifies "separate[] from Covered Employment"—is a *de facto* amendment to the pension plan that violates ERISA § 204(g), 29 U.S.C. § 1054(g). We disagree.

An interpretation, or even a re-interpretation, does not constitute a plan amendment for the purposes of ERISA's anti-cutback rule. *See Kirkendall v. Halliburton, Inc.*, 707 F.3d 173, 184 (2d Cir. 2013) ("Even broadly interpreted, the word 'amendment' contemplates that the actual terms of the plan changed in some way or that the plan improperly reserved discretion to deny benefits.") (citation omitted). Aracich does not identify a change in the actual terms of the plan. He remains entitled to his pension, which he can collect when he retires. We affirm the district court's dismissal of Count Three.

**D**

Fourth, Aracich claims that the district court incorrectly treated his breach-of-contract claim as based on state law rather than a claim against the plan and pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). We are not persuaded.

The district court explained that Aracich's breach-of-contract claim "is duplicative of, and therefore preempted by, ERISA." *Aracich*, 629 F. Supp. 3d at 116. Aracich "claims defendants breached the Plans' governing documents by not paying his benefits." *Id.* That claim duplicates Aracich's other claims under ERISA, and indeed the district court considered Aracich's claims "to recover benefits due to him under the terms of his plan" and "to enforce his rights under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). We affirm the district court's dismissal of Count Four.

**E**

Fifth, Aracich argues that the Trustees breached "their duty to him to exercise prudent man diligence and care and skill under the circumstances in their fiduciary capacity as Trustees of the Pension Fund," Aracich Br. 23, when they (1) improperly denied his claim for benefits; (2) failed to adhere to the Plans' governing documents; (3) misrepresented to him the terms of the documents; and/or (4) failed to satisfy ERISA's disclosure and reporting requirements. We again disagree.

10

The first two contentions reiterate the basis of Aracich's claim for benefits and do not state an independent claim for breach of fiduciary duty. With respect to the third and fourth contentions—misrepresentation and non-compliance—Aracich fails to identify documents that were not provided to him or reporting standards the Trustees failed to satisfy. We again affirm the district court.

\* \* \*

We have considered Aracich's remaining arguments, which we conclude are without merit. We affirm the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court